# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MATTHEW BEISHL | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| COUNTY OF BUCKS | : | NO. 18-2835 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                                       **December 27, 2018**

Matthew Beishl alleges that his former employer, the County of Bucks (the County), retaliated and discriminated against him and failed to make reasonable accommodations for him in relation to his disability. He brings five counts under three statutes: retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. (Count I), Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (Count III) and Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq. (Count V); and discrimination and failure to accommodate under the ADA (Count II) and PHRA (Count IV).[1]

The County moves to dismiss Beishl's ADA and PHRA retaliation, discrimination, and failure to accommodate claims (Counts II through V). It argues that his FMLA requests did not constitute protected activity and his termination did not occur under circumstances giving rise to an inference of discrimination or retaliation. It also argues that Beishl has not alleged facts establishing that he needed or requested a reasonable accommodation or that the requested accommodation bore a causal connection to his

---

[1] Although the headings to Beishl's Counts II and IV also reference "failure to engage in the interactive process," he acknowledges that no such independent claim exists. Resp. to Mot. to Dismiss at 14.

disability.  Lastly, the County argues, and Beishl does not dispute, that his failure to accommodate claim under the PHRA is time-barred.

## Factual Background

As alleged in the First Amended Complaint, in 1999 Beishl was diagnosed with esophageal achalasia, which affects his ability to sleep, eat and digest food.[2] On March 6, 2006, he began working for the County as a custodian.[3] When it hired him, the County knew of Beishl's disability.[4] In 2010, Beishl was promoted to level one groundskeeper.[5] From 2011, he worked at Core Creek Park close to his home, although the County also assigned him at times to the farther Neshaminy Manor location.[6] Beishl claims that the additional commuting time caused increased nocturnal regurgitations and chest pain, which in turn caused a further reduction in sleep.[7] The County knew of Beishl's esophageal achalasia throughout the course of his employment.[8]

In March or April of 2015, Beishl took FMLA leave to undergo surgery related to his esophageal achalasia.[9] In February of 2016, the County held a *Loudermill* hearing[10]

---

[2] First Amended Complaint (FAC) at ¶ 13.

[3] *Id.* at ¶ 11.

[4] *See id.* at ¶ 13.

[5] *Id.*

[6] *Id.* at ¶ 18.

[7] *Id.*

[8] *Id.* at ¶ 13.

[9] *Id.* at ¶ 14.

[10] A governmental entity must provide a hearing before subjecting an employee to serious discipline such as termination.  *See Slagle v. Cty. of Clarion*, 435 F.3d 262, 264 & n.2 (3d Cir. 2006) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985)).

in which it charged him with exceeding his FMLA leave.[11] Beishl responded that working at Neshaminy Manor was taxing on his health and requested that the County not assign him there in the future.[12]

In December of 2016, the County's Director of General Services, Kevin Spencer, informed Beishl that the County was assigning him to Neshaminy Manor.[13] Beishl notified Spencer of his scheduled February 2017 endoscopy and requested that he not be assigned due to his disability.[14] Beishl offered to work weekend shifts at Core Creek Park, but Spencer refused.[15]

In January of 2017, after Beishl used four consecutive days of FMLA leave, David Sutterly, the maintenance supervisor to whom Beishl reported, falsely informed him that because he had used four consecutive days of FMLA leave the County's policy required him to register for consecutive FMLA leave.[16] Beishl responded that he had to use four consecutive days of FMLA leave because working at Neshaminy Manor had exacerbated his esophageal achalasia and limited his ability to sleep.[17] Sutterly refused his request for an assignment back to Core Creek Park.[18]

---

[11] FAC at ¶ 17.

[12] *Id.*

[13] *Id.* at ¶ 19.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

Beishl submitted a request for continuous FMLA leave with a return date of February 21, 2017, a few days after his endoscopy.[19] On that date, when Beishl attempted to return from FMLA leave, he was told that he needed documentation from his primary care physician that he could resume normal work activities without accommodation.[20] Beishl obtained the documentation on February 27, 2017.[21]

Beishl returned to work in early March.[22] Shortly thereafter, the County held a second *Loudermill* hearing at which it accused Beishl of misusing his FMLA leave.[23]

Immediately after a third *Loudermill* hearing on May 8, 2017, the County terminated Beishl for FMLA "fraud and abuse" that had occurred several months earlier.[24] Beishl alleges that the County replaced him "with a less experienced, less qualified, non-disabled individual . . . ."[25]

Beishl filed a Notice of Charge of Discrimination (Charge) with the Equal Employment Opportunity Commission (EEOC) on September 28, 2017.[26] On his Charge, Beishl signed the line indicating that he wanted the Charge cross-filed with the

---

[19] *Id.* at ¶ 21.

[20] *Id.* at ¶ 22.

[21] *Id.*

[22] *Id.* at ¶ 23.

[23] *Id.* at ¶¶ 23-24.

[24] *Id.* at ¶ 26.

[25] *Id.* at ¶ 28.

[26] Mot. to Dismiss at Ex. 1.

Pennsylvania Human Relations Commission (PHRC).[27] The EEOC issued him a Notice of Right to Sue on April 10, 2018.[28]

**Standard of Review**

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), the court must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. The court next determines whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). In making this determination, all well-pleaded allegations of the complaint must be accepted

---

[27] *Id.*

[28] FAC at ¶ 4.

5

as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

A court may consider only the complaint, exhibits attached to the complaint, matters of public record and undisputedly authentic documents to the extent the plaintiff bases its claims upon them. *Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (*citing Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

**Analysis**

Beishl alleges that the County terminated him due to his esophageal achalasia and in retaliation for requesting FMLA leave and not to work at Neshaminy Manor. He alleges that these requests were for reasonable accommodations for his disability which the County refused. The County responds that the circumstances surrounding Beishl's termination do not raise an inference of discrimination or retaliation. It argues that FMLA requests are not protected activity. The County also argues that allowing him to work only at Core Creek Park was neither a necessary accommodation nor causally connected to his esophageal achalasia.

*Failure to Accommodate*[29]

To state a claim under the ADA for failure to accommodate an employee's known physical or mental disabilities, the plaintiff must allege facts showing that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance;

---

[29] Claims under the ADA and the PHRA are subject to the same analysis. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996)). Mirroring the practice in the parties' briefs, we refer only to the ADA except when our analysis applies solely to the PHRA.

6

(3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (additional citations omitted). The employee has the burden of notifying the employer of his disability and his need for a reasonable accommodation. *Taylor,* 184 F.3d at 313.

Although the ADA does not define "reasonable accommodation," the implementing regulations provide that it encompasses those modifications to the work environment or to the manner under which duties are carried out "that enable an individual with a disability to perform the essential functions of that position" or otherwise place the individual on an equal footing with his coworkers. 29 C.F.R. § 1630.2(o)(1)(ii)-(iii) (2012). Examples of a reasonable accommodation may include modification of work schedule and reassignment to a vacant position. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii).

The Third Circuit has not yet addressed whether the requested accommodation must bear a relationship or connection to the life activity limited by the underlying disability. Other circuit courts have. The First, Second, Seventh and Eighth Circuits require a link between the limitation and the accommodation. *See, e.g., Brumfeld v. City of Chicago*, 735 F.3d 619, 633 (7th Cir. 2013); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003); *Buckley v. Consol. Edison Co. of N.Y.*, 155 F.3d 150, 157 (2d Cir. 1998) (en banc).

The employer's duty to accommodate arises only where the employee requires an accommodation in order to be able to perform the essential functions of his job. *Brumfield*, 735 F.3d at 632 (citing 42 U.S.C. §§ 12111(a), 12112(b)). In other words, "an employer need not accommodate a disability that is irrelevant to an employee's ability to perform

7

the essential functions of her job – not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place." *Id.*

Beishl's disability did not affect his ability to do his job. It affected his travel time. What Beishl wanted was not an accommodation to perform the essential functions of his job as a groundskeeper. He wanted more time to himself outside of his job. Indeed, the accommodation he sought – a job closer to his home – is not necessary to perform the essential functions of the groundskeeper's job. Beishl makes no allegation that he was unable to do his job at Neshaminy Manor. The accommodation requested was not necessary in order for him to be able to perform the essential functions of the job of groundskeeper. In other words, Beishl did not need an accommodation to perform the essential functions of his job.

The requirement of a causal link means an employer has no duty to provide an accommodation requested for the "personal benefit" of the disabled employee. See *Boykin v. ATC/Vancom of Colo., L.P.*, 247 F.3d 1061, 1065-66 (10th Cir. 2001) (employer was not required to accommodate plaintiff's school schedule). Nor must an employer provide a requested accommodation where "the employee's limitations do not affect her ability to perform th[e] essential functions" of the job. *Brumfeld*, 735 F.3d at 633.

Although a dispute regarding the reasonableness of an accommodation generally presents a question of fact, the court may decide the issue on a motion to dismiss where no reasonable jury could find that the requested accommodation was reasonable. See *Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 240 n.50 (E.D. Pa. 2014) (citing *Williams*

*v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004); *Buskirk v. Apollo Metals*, 307 F.3d 160, 170–71 (3d Cir. 2002)).

The County challenges the reasonableness of Beishl's requested accommodations. It argues that FMLA leave is not a reasonable accommodation as a matter of law and assignment only to Core Creek Park was neither necessary nor causally connected to the limitations arising from his esophageal achalasia.

The Third Circuit has recognized "that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA . . . ." *Capps*, 847 F.3d at 156-57 (citing 29 C.F.R. § 825.702(c)(2) (2013)). *See also* 29 C.F.R. § 825.702(c)(2) (providing example of disabled employee's request for medical leave being treated as both FMLA leave and a reasonable accommodation). Although the Third Circuit did not elaborate upon what those circumstances are, district courts within the circuit have. A request for FMLA leave may serve as a request for reasonable accommodation where the employer knows or has reason to believe "that the request was based on something other than a one-time" event. *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017). Thus, a prospective request for periodic FMLA leave may serve as a request for reasonable accommodation. *Id.*

Even when a request for FMLA leave is also deemed one for a reasonable accommodation under the ADA, the employee may not maintain his failure to accommodate claim when the employer approves and the employee takes the requested medical leave. *Capps*, 847 F.3d at 156-57; *Arana v. Temple Univ. Health Sys.*, No. 17-525, 2018 WL 2063600, at *5-6 (E.D. Pa. May 3, 2018). In such cases, the employer

9

accommodated the employee's limitations when it granted the requested accommodation. *Capps*, 847 F.3d at 156-57; *Arana*, 2018 WL 2063600, at *5-6.

This is what happened here. Beishl requested and took FMLA leave in March or April of 2015 and January and February of 2017.[30] Even assuming that these requests for FMLA leave were requests for reasonable accommodation, Beishl may not base his failure to accommodate claim upon them because his requests were approved and he availed himself of the requested leave.

Beishl also requested to work only at Core Creek Park and not at Neshaminy Manor. He contends that this requested accommodation was reasonable because the "Neshaminy Manor location was much farther from [his] home and the added time required to commute to and from said location caused an exacerbation of Plaintiff's disability. Specifically, [he] experienced increased nocturnal regurgitations and chest pain, causing further reduction in sleep."[31]

The Third Circuit has held that "under certain circumstances the ADA can obligate an employer to accommodate an employee's disability-related difficulties in getting to work, if reasonable." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 505 (3d Cir. 2010). However, as the County points out, no plausible connection exists between commuting to Neshaminy Manor and symptoms of nocturnal regurgitations and chest pain resulting in decreased sleep, and Beishl points to none in his amended complaint. He does not allege that he was medically restricted to driving for a particular amount of time or suggest why a longer drive would exacerbate his symptoms. To the contrary, he obtained medical

---

[30] FAC at ¶¶ 14, 20-22.

[31] *Id.* at ¶ 18.

clearance that he could perform his "normal work activities without requiring an accommodation."[32] *Cf. id.* at 506 (reasonableness of request to work day shifts only was a jury question where the plaintiff had produced a note from her doctor recommending that she not drive at night due to loss of vision in one eye). The complaint fails to allege, directly or inferentially, any causal connection between the length of Beishl's commute and his disability.

Taking Beishl's allegations in the light most favorable to him, he alleges that he required a greater amount of time attempting to sleep because of his esophageal achalasia, and the more time-consuming commute to Neshaminy Manor reduced the time available for personal activities, such as sleeping.[33] However, he does not allege that he was unable to perform the essential functions of his job if assigned to work at Neshaminy Manor. On the contrary, Beishl maintains that he performed satisfactorily "[t]hroughout the course of his employment."[34] He alleges that the County terminated him due to discrimination and retaliation, not performance issues.[35]

The ADA requires an employer to accommodate an employee's limitations only to the extent necessary to ensure that he has the same "workplace opportunities" as other employees. *Brumfeld*, 735 F.3d at 633 (quoting *U.S. Airways v. Barnett*, 535 U.S. 391, 397 (2002)). However, the employer has no obligation to provide an accommodation for an employee capable of doing his job without it. Thus, there is "no obligation to shorten

---

[32] *Id.* at ¶ 22.

[33] *Id.* at ¶¶ 13, 18.

[34] *Id.* at ¶ 11.

[35] *Id.* at ¶ 27.

11

[an employee's] driving distance" where he does "not require a shorter drive to perform his job functions." *Id.*; *Romeo v. Dart*, 222 F. Supp. 3d 707, 712 (N.D. Ill. 2016).

In Beishl's case, the longer commute to and from Neshaminy Manor cut into his non-working, non-sleeping personal time, which was already reduced by his esophageal achalasia. But, the ADA does not require the County to accommodate Beishl's personal life, including his sleep schedule. *Boykin, L.P.*, 247 F.3d at 1065-66; *see also Rosenfeld v. Canon Bus. Solutions, Inc.*, No. 09-4217, 2011 WL 4527959, at *17 (D.N.J. Sept. 26, 2011) ("Plaintiff's shift impacts Plaintiff's ability to sleep, but sleeping is not part of his job.") (citation omitted). Because no reasonable jury could find that Beishl's requested accommodation to work only at Core Creek was reasonable, we shall dismiss his failure to accommodate claim under the ADA and the PHRA.

*PHRA Time Bar*

The County argues that Beishl's PHRA failure to accommodate claim is time-barred. Beishl does not respond to this argument. Even if Beishl had stated a claim for failure to accommodate under the PHRA, it is time-barred.

The PHRA requires that a plaintiff must file a charge with the PHRC within 180 days of the discriminatory act. 43 PA. STAT. ANN. § 959(h) (1997). Each discriminatory act starts a new 180-day period for filing charges based upon that act. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002)).

Beishl bases his failure to accommodate claim on the County's refusal to assign him to Core Creek Park only.[36] He last requested to be assigned to work only at Core

---

[36] *See id.* at ¶ 42.

Creek Park in January 2017. The County denied his request at that time.[37] Thus, Beishl had until July 2017 to file his Charge with the PHRC.

Beishl does not specify when he filed his Charge with the PHRC. However, when Beishl filed his Charge with the EEOC on September 28, 2017, he selected the option to have it cross-filed with the PHRC.[38] *See Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may rely upon document integral to complaint without converting motion to dismiss into motion for summary judgment); *Kellam v. City of Phila.*, No. 14-7029, 2016 WL 147151, at *3 n.2. (E.D. Pa. Jan. 13, 2016) (relying upon EEOC charge under *Burlington Coat Factory*). His PHRC Charge was deemed filed on that date, which was two months too late. Therefore, his PHRA failure to accommodate claim is untimely.

*Retaliation*

To state a claim under the ADA for retaliation, the plaintiff must allege facts showing (1) he engaged in protected activity, (2) he suffered an adverse employment action after or contemporaneous with the protected activity, and (3) a causal connection between the protected activity and the adverse action. *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (citation omitted). There is no dispute that Beishl's termination was an adverse employment action. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). However, the parties contest whether he engaged in protected activity and, if he did, whether any causal connection exists between that activity and his termination.

---

[37] *Id.* at ¶ 20.

[38] Mot. to Dismiss at Ex. 1.

13

The ADA protects opposition to any act or practice made unlawful by the ADA; participation in an ADA investigation, proceeding or hearing; and good faith requests for accommodation. 42 U.S.C. § 12203(a); *Williams*, 380 F.3d at 759 n.2. The plaintiff must also allege facts supporting a "causal connection" between the protected activity and his termination. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The plaintiff may establish this connection through the "unusually suggestive temporal proximity" of the adverse action to the protected activity, "a pattern of antagonism coupled with timing," or other facts supporting an inference of causation. *Id.* (quoting *DeFlaminis*, 480 F.3d at 267).

Although we have determined that Beishl's requests to work only at Core Creek Park were not reasonable, we cannot say from the face of the amended complaint that they were not made in good faith. *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) ("Even if ultimately the request is found to be unreasonable, the standard for retaliation is only that [the employee] have requested the accommodation in good faith."). The amended complaint also supports an inference that Beishl took FMLA leave in good faith to undergo surgery and an endoscopy, and to cope with his condition.[39] Therefore, his requests not to work at Neshaminy Manor and for FMLA leave constitute protected activity under the ADA.

Beishl first took FMLA leave in March or April of 2015 to undergo surgery related to his esophageal achalasia.[40] In February of 2016, December of 2016 and January of

---

[39] FAC at ¶¶ 14, 20-21.

[40] *Id.* at ¶ 14.

2017 he requested that he not be transferred to Neshaminy Manor.[41] He last took FMLA leave in late February of 2017. Approximately three months later, he was terminated. That period is not so long as to preclude a finding of a causal connection between his requests and his termination. *Ginsburg v. Aria Health Physician Servs.*, No. 12-1140, 2012 WL 3778110, at *6 (E.D. Pa. Aug. 31, 2012); *see also Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2018 WL 4145037, at *4 (E.D. Pa. Aug. 30, 2018).

*Discrimination*

To state a claim for discrimination under the ADA, a plaintiff must allege that he (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform, with or without reasonable accommodations, essential functions of the job; and (3) has suffered an otherwise adverse employment decision as a result of the discrimination. *See Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). The County does not deny that Beishl has alleged he is disabled and qualified. It argues that he has failed to allege that his termination occurred under circumstances giving rise to an inference of discrimination.

Beishl alleges facts from which one could reasonably conclude that the County terminated him due to his disability. Beishl contends that his termination was the culmination of a series of acts of discrimination against him by the County due to his esophageal achalasia. He points to the County's subjecting him to three disciplinary hearings, including the one leading to his termination, for utilizing FMLA leave to seek treatment for or otherwise manage his disability.[42] He alleges that his human resources director, Travis Monroe, attempted to dissuade him from seeking accommodations for his

---

[41] *Id.* at ¶¶ 17, 19-20.

[42] *Id.* at ¶¶ 16-17, 23-26.

15

disability.[43] He alleges that his supervisor misrepresented the County's FMLA leave policy, interfering with his ability to seek accommodation for his disability.[44] He maintains the County singled him out due to his disability and assigned him to Neshaminy Manor over more junior union coworkers.[45] Taking these allegations in the light most favorable to Beishl, we conclude he has sufficiently stated a claim that the County discriminated against him because of his esophageal achalasia.

## Conclusion

Beishl fails to plead a claim for failure to accommodate under the ADA or PHRA. His failure to accommodate claim under the PHRA is also untimely. Beishl pleads claims for retaliation and disability discrimination under the ADA and PHRA. Therefore, we shall grant the motion in part and deny it in part.

---

[43] *Id.* at ¶ 22.

[44] *Id.* at ¶ 20.

[45] *Id.* at ¶ 19.